137 Nev., Advance Opinion 74

IN THE SUPREME COURT OF THE STATE OF NEVADA

GUSTAVO RAMOS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79781

**FILED**

DEC 09 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a verdict following a bench trial, of two counts of murder with the use of a deadly weapon and one count of sexual assault with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

*Affirmed.*

Resch Law, PLLC, dba Conviction Solutions, and Jamie J. Resch, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Karen L. Mishler, Deputy District Attorney, Clark County, for Respondent.

BEFORE THE SUPREME COURT, PARRAGUIRRE, STIGLICH, and SILVER, JJ.

*OPINION*

By the Court, SILVER, J.:

Appellant Gustavo Ramos was arrested and charged in 2010 for the sexual assault and murder of a woman 12 years earlier. When the

21-35058

offenses were committed, the statute of limitations for the sexual assault charge was 4 years unless the victim or a person authorized to act on the victim's behalf filed a written report of the assault with law enforcement, in which case NRS 171.083(1) removed the statute of limitations. In this appeal, we consider the applicability of the statutory exception in NRS 171.083(1) when the victim is both sexually assaulted and murdered. We conclude that under the facts here—where the persons who discovered the victim's body notified the police and law enforcement filed a written report concerning the sexual assault within the limitations period—the requirements of NRS 171.083(1) were satisfied. Thus, there was no statutory time limit in which the State was required to file the sexual assault charge, and the district court did not err in denying Ramos's motion to dismiss. Because the other issues raised on appeal also do not warrant relief, we affirm the judgment of conviction.

I.

In May 1998, two elderly victims were murdered in their apartments at a retirement facility. One of the victims was found bludgeoned to death in his apartment, and the other victim's body was discovered the next day in her apartment by her friend and her son, who immediately called the police. The police responded to the scene and collected evidence from the apartments, including a newspaper with a bloody palm print on it and a blood-stained t-shirt, but they were unable to identify a suspect. A month later, a detective filed a written report detailing the female victim's autopsy results and stating that she had been sexually assaulted and stabbed to death.

Approximately 11 years later, the State retested the evidence using more technologically advanced DNA testing and obtained a DNA profile from the t-shirt. The DNA profile was submitted into the national Combined DNA Index System (CODIS), which returned a match for Ramos. The palm print on the newspaper matched Ramos's as well. Subsequently, in 2010, the State charged Ramos with murdering both victims and sexually assaulting the female victim.

Ramos moved to dismiss the sexual assault charge, arguing that because the statute of limitations when the sexual assault took place was 4 years, the State's prosecution was time-barred. The district court denied Ramos's motion, finding that there was no limitations period for the offense pursuant to NRS 171.083 because the victim's friend and son, who had discovered the victim's body and reported her death to the police, were authorized to act on the dead victim's behalf and provided information to the police that was incorporated into various written reports setting forth the murder and sexual assault offenses. Following a bench trial, Ramos was found guilty of all three charges and was sentenced to an aggregate sentence of life without the possibility of parole. This appeal followed.

## II.

Ramos argues that the district court erred by denying his motion to dismiss the sexual assault charge because the charge was filed after the statute of limitations had expired and the exception to the statute of limitations in NRS 171.083(1) did not apply. We disagree.

The district court's application of NRS 171.083(1) presents an issue of statutory interpretation that we review de novo. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011); *see also Bailey v. State*, 120 Nev. 406, 407, 91 P.3d 596, 597 (2004). Our primary goal in construing a

statute is to give effect to the Legislature's intent in enacting it. *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011). Thus, we first look to the statute's plain language to determine its meaning, and we will enforce it as written if the language is clear and unambiguous. *Id.* We will look beyond the statute's language only if that language is ambiguous or its plain meaning was clearly not intended or would lead to an absurd or unreasonable result. *Newell v. State*, 131 Nev. 974, 977, 364 P.3d 602, 603-04 (2015); *Sheriff, Clark Cty. v. Burcham*, 124 Nev. 1247, 1253, 198 P.3d 326, 329 (2008). In interpreting an ambiguous statute, "we look to the legislative history and construe the statute in a manner that is consistent with reason and public policy." *Lucero*, 127 Nev. at 95, 249 P.3d at 1228.

NRS 171.083(1) provided that if the "victim of a sexual assault or a person authorized to act on behalf of a victim of a sexual assault files with a law enforcement officer a written report concerning the sexual assault" within the applicable limitations period,[1] then there is no statutory time limit for commencing prosecution of the sexual assault. 1997 Nev. Stat., ch. 248, § 1, at 891.

Ramos argues that because neither the victim's friend nor her son was a person "authorized to act on behalf of [the] victim," and neither the friend nor the son filed a "written report concerning the sexual assault," the district court erred in finding that NRS 171.083 applied. According to

---

[1]The statute of limitations for sexual assault was 4 years at the relevant time. 1997 Nev. Stat., ch. 248, § 1, at 891 (NRS 171.085). In 2015, the Legislature extended the statute of limitations to 20 years, but the amendment did not apply here because the 4-year period had expired in 2002. *See* 2015 Nev. Stat., ch. 150, §§ 3, 5, at 583-84 (providing that the 20-year limitations period applies retroactively only if the applicable limitations period had commenced but not yet expired on October 1, 2015).

Ramos, because the victim died before the sexual assault was discovered, she could not have given anyone authority to file a police report on her behalf. And neither the victim's son nor her friend, who were unaware when they discovered the victim's body that she had been sexually assaulted, filed "a written report *concerning the sexual assault*," as required by the plain language of NRS 171.083. (Emphasis added.) Thus, under Ramos's interpretation of the statute, the limitations period is removed only when a person who has been expressly authorized by the victim writes and files a report containing allegations of the sexual assault. Conversely, the State argues that the district court properly applied the statute because the deceased victim's son and friend were authorized to act on her behalf in reporting her death to the police and there was a written report prepared by law enforcement. The State further contends that Ramos's proposed interpretation would have the absurd result of allowing the statutory exception to apply only to surviving victims of sexual assault and not to victims who are murdered.

We agree with the State that Ramos's proposed interpretation of the statute is unreasonable. First, as to NRS 171.083(1)'s phrase "a person authorized to act on behalf of [the] victim," the plain language contains no requirement that the victim give the person express authorization. Moreover, such a requirement would have the perverse effect of allowing the exception in NRS 171.083(1) to apply only when the victim survives and is able to disclose the sexual assault, and not when the victim is murdered during or immediately after the sexual assault. This would mean that a perpetrator who sexually assaults and murders a victim could escape prosecution for the sexual assault if the perpetrator's identity is not discovered within the applicable limitations period even when the

sexual assault is the subject of a written report filed with law enforcement within the limitations period. Ramos's proposed interpretation would not only produce this absurd result but would also hinder the statute's purpose, which, as expressed in its text, is to remove time limitations when the sexual assault is promptly reported to and documented by law enforcement. *See Houtz v. State*, 111 Nev. 457, 461, 893 P.2d 355, 358 (1995) ("The interpretation of a statute should be reasonable and should avoid absurd results."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012) ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored."). Thus, we decline to read into the statute a requirement that an "authorized" person have express permission from the victim to act on the victim's behalf. Instead we agree with the district court that when the victim has been murdered, a person who discovers the victim's body is "authorized" within the meaning of NRS 171.083(1) to report the crime on the victim's behalf.[2] This interpretation both comports with the plain language of the statute and avoids unreasonable results.

Next, as to NRS 171.083(1)'s phrase "files with a law enforcement officer a written report concerning the sexual assault," we conclude that the language is ambiguous. It can be interpreted as either requiring the authorized person to create a written report alleging sexual

---

[2]The parties' arguments on appeal regarding the meaning of "authorized" focus only on whether the victim's son and friend were "authorized" persons. We do not address whether the investigating officer who wrote the police report concerning the sexual assault, or the coroner who wrote the autopsy report, were "authorized" within the meaning of NRS 171.083(1), as the district court did not make such a finding and the parties provide no argument on it.

assault and file it with the police, or as requiring the authorized person to assist the police in writing and filing a report concerning the sexual assault. The former interpretation, which is proposed by Ramos, would require the authorized person to have knowledge of a sexual assault and report it in writing to law enforcement. Under this interpretation, if the victim is found murdered and it is not readily apparent to the person who finds the victim's body that he or she has been sexually assaulted, NRS 171.083(1) would not apply even if a law enforcement officer promptly files a written report about the sexual assault. We conclude that this interpretation fails to effectuate the Legislature's intent in enacting the statute. The legislative history indicates that the statute was intended to encourage the memorialization of sexual assault allegations as soon after the offense as practical so that an efficient and timely prosecution could occur and frivolous, vindictive, or false allegations could be avoided or deterred. *See* Hearing on A.B. 97 Before the S. Judiciary Comm., 69th Leg. (Nev., Apr. 22, 1997) (recognizing that one concern behind the statute of limitations is the difficulty in obtaining witnesses and prosecuting an offense after a certain time period, and thus the statutory exception was intended to "encourage authorities and victims to come forward" and promptly report a sexual assault so that it could be better prosecuted); Hearing on A.B. 97 Before the S. Judiciary Comm., 69th Leg. (Nev., May 19, 1997) ("Under the proposed amendment . . . the statute of limitations is tolled indefinitely as long as the complaint is reported within a certain time frame.").

It is clear to us that the Legislature intended the statutory time limitation on sexual assault to be removed as long as there was a written report of the allegations. Thus, construing the statute consistent with reason and public policy, we interpret it as allowing for the authorized

person to assist the police in causing a written report to be filed. Here, the victim's son and friend both reported her murder to the police, with the friend submitting a written statement. Though neither the son nor the friend knew of or reported the sexual assault, an investigating police officer filed a written report several weeks later entitled "Murder with Deadly Weapon/Sexual Assault," detailing the autopsy results and the medical examiner's opinion that the victim had been sexually assaulted. We conclude that this written report documenting the sexual assault satisfies NRS 171.083's written report requirement. Therefore, the district court correctly found that NRS 171.083 applied and did not err by denying Ramos's motion to dismiss.[3]

## III.

We conclude that, under the circumstances here—where a victim was sexually assaulted and murdered, the individuals who discovered the victim's body notified the police, and law enforcement filed a written report detailing the sexual assault within the applicable limitations

---

[3]Ramos also argues that (1) the district court erred in allowing the State to amend the information to include the sexual assault charge, (2) there was insufficient evidence to support the convictions, (3) his statements to the police should have been suppressed, (4) the district court erred in admitting testimony and a report from an unavailable witness, (5) the district court erred in denying his motion to dismiss for failure to collect evidence, (6) the district court erred in denying his motion to strike a sentence of life without the possibility of parole, and (7) cumulative error requires reversal. We have considered each of these arguments and conclude that none warrants relief.

period—the requirements of NRS 171.083(1) were satisfied such that no statutory time limit on commencing prosecution applied to the sexual assault charge. Accordingly, we affirm the judgment of conviction.

_____, J.
Silver

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A

9