140 Nev., Advance Opinion 7

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

LINA MARIE WILLSON,
Petitioner,
vs.
THE FIRST JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CARSON CITY; AND THE
HONORABLE JAMES E. WILSON,
DISTRICT JUDGE,
Respondents,
    and
THE STATE OF NEVADA,
Real Party in Interest.

No. 84353-COA

FILED

FEB 22 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of certiorari challenging an order of the district court denying an appeal from a judgment of conviction, entered pursuant to a bench trial, of obstructing a public officer.

*Petition granted.*

Charles H. Odgers, Public Defender, Carson City,
for Petitioner.

Aaron D. Ford, Attorney General, Carson City; Jason Woodbury, District Attorney, and Peter W. Smith and Sarah E. White, Deputy District Attorneys, Carson City,
for Real Party in Interest.

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

24-06349

*CORRECTED OPINION*[1]

PER CURIAM:

In this opinion, we consider constitutional challenges to NRS 197.190, which provides that a person may not "willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties." Petitioner Lina Marie Willson was charged and convicted under NRS 197.190 after yelling from her front yard at several police officers, who were attending to a separate, potentially life-threatening matter involving a juvenile on the street near Willson's house. After the district court affirmed her misdemeanor conviction, Willson petitioned for a writ of certiorari, arguing that NRS 197.190 is unconstitutionally overbroad or vague. We conclude that (1) NRS 197.190 applies only to physical conduct or fighting words that are specifically intended to hinder, delay, or obstruct a public officer and, therefore, (2) NRS 197.190, as construed by this court, is not unconstitutionally overbroad or vague, either on its face or as applied to Willson.

Although we hold that Willson's as-applied claims fail, we recognize that Willson's claims implicate the sufficiency of the evidence in light of our interpretation of NRS 197.190. Since the district court did not have the benefit of our interpretation of NRS 197.190 as applying only to physical conduct and fighting words, it did not consider whether there was sufficient evidence to support Willson's conviction. Accordingly, we grant the petition and direct the clerk of this court to issue a writ of certiorari upholding NRS 197.190's constitutionality and instructing the district court

---

[1]This corrected opinion is issued in place of the opinion filed on February 8, 2024.

to reconsider Willson's direct appeal for the sole purpose of addressing whether, under this court's interpretation of NRS 197.190, sufficient evidence supported Willson's conviction.

*FACTS AND PROCEDURAL HISTORY*

On March 25, 2021, the Carson City Sheriff's Office responded to a call indicating a juvenile was contemplating suicide. Sergeant Mike Cullen was the first officer to arrive and saw the juvenile walking down a residential road with a knife in his hands. Sergeant Cullen followed the juvenile in his car and attempted to communicate with him. At some point, the juvenile stopped in the street, and Sergeant Cullen got out of his car and continued to communicate with the juvenile from a distance. The juvenile pressed the knife into his body a couple of times and stated he wanted to kill himself. In accord with his training, Sergeant Cullen attempted to build rapport with the juvenile to prevent the juvenile from committing suicide.

Shortly thereafter, more officers arrived on the scene. One officer, Deputy Nicholas Simpson, maintained a position with a beanbag shotgun while the other officers attempted to deescalate and control the scene. Deputy Simpson was to use the beanbag shotgun if the public or the officers became at risk. Approximately 15 minutes after the officers arrived on scene, the juvenile dropped the knife. Sergeant Cullen believed the situation was unstable up until that moment.

At some point during these 15 minutes, while the officers were interacting with the juvenile, Willson, who lived next door to where the incident was taking place, started yelling at the officers and the juvenile from the middle of her front lawn. Willson continued to yell at the officers

even though two deputies had asked her to stop yelling several times.[2] The officers generally could not recall what Willson was yelling, although Sergeant Cullen heard Willson yell at some point that "she was a witness of some sort."

The officers testified that Willson did not leave her yard, did not threaten them with violence, and did not throw anything at them. Nevertheless, the officers testified that Willson's yelling was loud and disruptive and delayed their attempts to get the juvenile to drop the knife because it interfered with their ability to build rapport and interact with the juvenile. Deputy Simpson also testified that he had to put down the beanbag shotgun to address Willson because of her yelling, which put the officers at risk. Eventually, Willson's behavior "stopped enough" to where the officers were able to get the juvenile over to the curb, and the juvenile dropped the knife.

Thereafter, the State charged Willson with obstructing a public officer in violation of NRS 197.190, and Willson was convicted after a bench trial in Carson City Justice Court. Willson appealed her conviction to the district court, arguing that NRS 197.190 was unconstitutionally overbroad and vague both on its face and as applied to her. The district court denied the appeal, holding NRS 197.190 was not unconstitutionally overbroad or vague because the statute required both due notice and the specific intent to obstruct a public officer.[3] Wilson then filed this petition for a writ of certiorari.

_____

[2]Deputy Simpson testified that he asked Willson to stop yelling between three and five times.

[3]Respondent, the Honorable James E. Wilson, decided Willson's appeal and entered the challenged order. He has since retired, and the

*ANALYSIS*

In this petition, Willson challenges the constitutionality of NRS 197.190. This court is authorized to review a petition for a writ of certiorari in cases where a district court has passed upon the constitutionality of a statute on appeal from justice court. *See* Nev. Const. art. 6, § 4(1); NRS 34.020(3). "The constitutionality of a statute is a question of law that we review de novo." *Silvar v. Eighth Jud. Dist. Ct.*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006). "Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional." *Id.*

Willson argues NRS 197.190 is unconstitutionally overbroad and vague, both on its face and as applied to her. "The overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *Ford v. State*, 127 Nev. 608, 612, 262 P.3d 1123, 1125 (2011) (quoting *Chicago v. Morales*, 527 U.S. 41, 52 (1999)). The First Amendment of the United States Constitution prohibits the government from abridging an individual's freedom of speech.[4] U.S. Const. amend. I; *Busefink v. State*, 128 Nev. 525, 529, 286 P.3d 599, 602 (2012). "The vagueness doctrine holds that '[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or

---

Honorable Kristin N. Luis has succeeded him in Department Two of the First Judicial District Court.

[4]The First Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

encourages seriously discriminatory enforcement.'" *Ford*, 127 Nev. at 612, 262 P.3d at 1125 (alteration in original) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

To determine whether NRS 197.190 is overbroad or vague, we must first interpret NRS 197.190 to determine what the statute prohibits. *See id.* at 612, 262 P.3d at 1126 ("The first step in both overbreadth and vagueness analysis is to construe the challenged statute."); *see also United States v. Hansen*, 599 U.S. 762, 770 (2023) ("To judge whether a statute is overbroad, we must first determine what it covers."). After interpreting NRS 197.190, we determine whether NRS 197.190, as construed by this court, is overbroad or vague, either on its face or as applied to Willson.

*NRS 197.190 prohibits physical conduct or fighting words that are specifically intended to hinder, delay, or obstruct a public officer in the discharge of official powers or duties*

NRS 197.190 was enacted as part of the Crimes and Punishments Act of 1911, *reprinted in* Nev. Rev. Laws § 6805, at 1928 (1912), and has not been amended by the Legislature or interpreted in a published decision by the Nevada appellate courts since its enactment. The statute reads as follows:

> Every person who, after due notice, shall refuse or neglect to make or furnish any statement, report or information lawfully required of the person by any public officer, or who, in such statement, report or information shall make any willfully untrue, misleading or exaggerated statement, or who shall willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties, shall, where no other provision of law applies, be guilty of a misdemeanor.

NRS 197.190.

When interpreting a statute, this court's "primary goal . . . is to give effect to the Legislature's intent in enacting it." *Ramos v. State*, 137 Nev. 721, 722, 499 P.3d 1178, 1180 (2021). "[W]e first look to the statute's plain language to determine its meaning, and we will enforce it as written if the language is clear and unambiguous." *Id.* In determining the plain meaning of a statute, we consider both "the particular statutory language at issue, as well as the language and design of the statute as a whole." *Reggio v. Eighth Jud. Dist. Ct.*, 139 Nev., Adv. Op. 4, 525 P.3d 350, 353 (2023) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). "We will look beyond the statute's language only if that language is ambiguous or its plain meaning was clearly not intended or would lead to an absurd or unreasonable result." *Ramos*, 137 Nev. at 722, 499 P.3d at 1180. "An ambiguity arises where the statutory language lends itself to two or more reasonable interpretations." *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004).

As an initial matter, we recognize that NRS 197.190 provides three alternative means by which a person may be guilty of obstructing a public officer, and each alternative is laid out in a clause that begins with "who." Willson only challenges the constitutionality of the final clause, which she was charged with violating: "[e]very person . . . who shall willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties."[5] NRS 197.190.

---

[5]As such, all references to obstruction in this opinion refer to an obstruction charge under this last clause, unless stated otherwise. We express no opinion regarding the constitutionality of the other provisions of NRS 197.190.

Willson contends that NRS 197.190's scope is broad, prohibiting not only physical conduct but also protected speech. The State contends that NRS 197.190 is limited in its scope by due notice and specific intent requirements. As such, the parties raise three issues for this court's consideration: (1) whether NRS 197.190 requires that a person receive "due notice" that their behavior is hindering, delaying, or obstructing a public officer; (2) whether NRS 197.190 requires that a person have the specific intent to hinder, delay, or obstruct a public officer; and (3) whether NRS 197.190 prohibits speech that hinders, delays, or obstructs a public officer. We consider these issues in turn.

*NRS 197.190 does not require that a person receive "due notice" that they are hindering, delaying, or obstructing a public officer*

The State argues, and the district court held, that a person cannot be guilty of obstructing a public officer unless the person received due notice that their behavior was hindering, delaying, or obstructing a public officer. However, such an interpretation is at odds with the structure of the statute.

The phrase "after due notice" succeeds only the first "who" clause, which introduces the first alternative means of committing the offense. The phrase's placement within only the first clause indicates its application is limited to the category of persons described in that clause, i.e., those who "refuse or neglect to make or furnish any statement, report or information lawfully required of the person by any public officer." Indeed, interpreting NRS 197.190 as requiring due notice for each means of committing obstruction would lead to an absurd result, as it would require that a person convicted of obstruction under the second clause have received due notice that they were making a "willfully untrue, misleading or exaggerated statement."

Were we to follow the logic of the State and district court, to be consistent, we would also have to hold that the phrase following the second "who" clause—"in such statement, report or information"—would also have to apply to the other two clauses. However, this would lead to a nonsensical construction, prohibiting every person who, "in such statement, report or information" from "willfully hinder[ing], delay[ing] or obstruct[ing] any public officer in the discharge of official powers or duties." An absurd construction such as this should always be avoided. *Sheriff, Clark Cnty. v. Burcham*, 124 Nev. 1247, 1253, 198 P.3d 326, 329 (2008). Therefore, we conclude that NRS 197.190 does not require that a person receive due notice that their behavior is hindering, delaying, or obstructing a public officer.

*NRS 197.190 requires that a person have the specific intent to hinder, delay, or obstruct a public officer*

The State also argues, and the district court held, that a person cannot be guilty of obstructing a public officer unless the person has the specific intent to hinder, delay, or obstruct a public officer.

"Specific intent" is "[t]he intent to accomplish the precise criminal act that one is later charged with." *Intent, Black's Law Dictionary* (11th ed. 2019); *accord Bolden v. State*, 121 Nev. 908, 923, 124 P.3d 191, 201 (2005), *receded from on other grounds by Cortinas v. State*, 124 Nev. 1013, 1026-27, 195 P.3d 315, 324 (2008). In contrast, "general intent" is "[t]he intent to perform an act even though the actor does not desire the consequences that result." *Intent, Black's Law Dictionary*; *see Bolden*, 121 Nev. at 923, 124 P.3d at 201. With respect to NRS 197.190, specific intent would require that a person intend for a public officer to be hindered, delayed, or obstructed by the person's act, whereas general intent would require only that a person intend to perform an act that results in the

COURT OF APPEALS
OF
NEVADA

(O) 1947B

hinderance, delay, or obstruction of a public officer, regardless of whether the person desired such a result.

NRS 197.190 makes it unlawful to "willfully hinder, delay or obstruct any public officer in the discharge of official powers or duties." NRS 197.190 does not define the term "willfully"; therefore, we consider the term as it is commonly understood. *See Cornella v. Just. Ct. of New River Twp.*, 132 Nev. 587, 594, 377 P.3d 97, 102 (2016) ("When the Legislature does not specifically define a term, this court 'presume[s] that the Legislature intended to use words in their usual and natural meaning.'" (alteration in original) (quoting *Wyman v. State*, 125 Nev. 592, 607, 217 P.3d 572, 583 (2009))). Although the term is generally understood to mean "deliberately" or "intentional[ly]," *see Willful, Merriam-Webster's Collegiate Dictionary* (11th ed. 2020), the term may denote either that an act is "[v]oluntary and intentional, but not necessarily malicious" or that an act "involves [a] conscious wrong or evil purpose on the part of the actor," *see Willful, Black's Law Dictionary*.

Because the term "willfully" does not necessarily require malice, the phrase "willfully hinder, delay or obstruct any public officer" may reasonably be interpreted as requiring only that a person intend to perform an act that resulted in the hinderance, delay, or obstruction of a public officer. *See Robey v. State*, 96 Nev. 459, 461, 611 P.2d 209, 210 (1980) (stating the term "'willful' when used in criminal statutes with respect to proscribed conduct relates to an act or omission which is done intentionally, deliberately or designedly, as distinguished from an act or omission done accidentally, inadvertently, or innocently"); *see also Moore v. State*, 136 Nev. 620, 624, 475 P.3d 33, 36 (2020) (recognizing "the term 'wil[l]fully' has been defined to refer to general intent" in the context of statutes aimed at the

protection of infants (alteration in original) (quoting *Jenkins v. State*, 110 Nev. 865, 870, 877 P.2d 1063, 1066 (1994))).

However, because the term "willfully" may also suggest an evil or malicious purpose on the part of the actor, and the terms "hinder," "delay," and "obstruct" are transitive verbs that refer to a specific object, i.e., "any public officer," the phrase "willfully hinder, delay or obstruct any public officer" may also reasonably be interpreted as requiring that a person intend their act to hinder, delay, or obstruct a public officer. *See Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009) ("In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb . . . that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence."); *see also Byford v. State*, 116 Nev. 215, 234, 994 P.2d 700, 713 (2000) (holding "willful means intentional" and that "willful first-degree murder requires that the killer actually intend to kill"). Therefore, we conclude NRS 197.190 is ambiguous as to whether the offense is a general or specific intent crime.

"To interpret an ambiguous statute, we look to the legislative history and construe the statute in a manner that is consistent with reason and public policy." *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). We also consider "prior judicial interpretations of related or comparable statutes by this or other courts," *Castaneda v. State*, 132 Nev. 434, 439, 373 P.3d 108, 111 (2016), as well as definitions of the offense at common law, *see Adler v. Sheriff, Clark Cnty.*, 92 Nev. 641, 643, 556 P.2d 549, 550 (1976); *see also* NRS 193.050(3). Finally, "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *State v. Castaneda*, 126 Nev. 478, 481, 245 P.3d 550,

552 (2010) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)); *see also United States v. Del. & Hudson Co.*, 213 U.S. 366, 408 (1909) ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.").

Unfortunately, there is neither legislative history to assist in discerning legislative intent, nor any Nevada caselaw discussing the reasons for NRS 197.190's passage more than a century ago. *See City of Milwaukee v. Wroten*, 466 N.W.2d 861, 869, 871 (Wis. 1991) (declining to guess the original intent of the drafters in passing a 135-year-old ordinance that prohibited resisting an officer). Neither is there any Nevada caselaw discussing or recognizing the common law offense.

Other jurisdictions appear split on whether similar statutory offenses are general or specific intent crimes. *Compare People v. Roberts*, 182 Cal. Rptr. 757, 760-61 (App. Dep't Super. Ct. 1982) (holding a statute that made it a crime to "willfully resist[ ], delay[ ], or obstruct[ ] any public officer" required only a general intent to act), *and People v. Gleisner*, 320 N.W.2d 340, 341-42 (Mich. Ct. App. 1982) (holding a statute that made it a crime to "willfully obstruct, resist or oppose" an officer required "only an intent to do a certain physical act"), *with Harris v. State*, 726 S.E.2d 455, 457-58 (Ga. Ct. App. 2012) (recognizing a statute that made it a crime to knowingly and willfully obstruct or hinder an officer did not criminalize "any actions which incidentally hinder an officer" (quoting *Hudson v. State*, 218 S.E.2d 905, 907 (Ga. Ct. App. 1975))), *and State v. Singletary*, 327 S.E.2d 11, 13 (N.C. Ct. App. 1985) (holding a statute that made it a crime to "willfully and unlawfully resist, delay, or obstruct a police officer" did not proscribe innocent conduct but only conduct made with the intent to resist,

delay, or obstruct).[6] A few state courts appear to have explicitly considered whether the common law offense requires a specific intent to obstruct, and those cases suggest the common law offense is a specific intent crime. *See, e.g., Cover v. State*, 466 A.2d 1276, 1284 (Md. 1983) (holding the common law offense requires the "[i]ntent to obstruct or hinder the officer by the act"); *Commonwealth v. Adams*, 125 N.E.3d 39, 51 (Mass. 2019) (holding the common law offense requires "that the defendant intended his or her conduct, and intended 'the harmful consequences of the conduct—that is, the interference with, obstruction, or hindrance'" (quoting *Commonwealth v. Joyce*, 998 N.E.2d 1038, 1042 (Mass. App. Ct. 2013))).

Thus, to the extent there is guidance from other jurisdictions, it tends to lean toward interpreting the statute as requiring specific intent. Indeed, interpreting NRS 197.190 as requiring only a general intent to act would raise grave doubts as to the statute's constitutionality. In particular, such an interpretation would criminalize a significant amount of constitutionally protected activity. For example, "merely remonstrating with an officer in behalf of another, or criticizing or questioning an officer while he is performing his duty" could constitute an unlawful act. *State v. Leigh*, 179 S.E.2d 708, 713 (N.C. 1971); *see also City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (stating "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers").

---

[6]We note that NRS 199.280, which prohibits a person from "willfully resist[ing], delay[ing] or obstruct[ing] a public officer in discharging or attempting to discharge any legal duty of his or her office" is similar, but not identical, to NRS 197.190. However, there is also no Nevada caselaw interpreting NRS 199.280 from which this court may draw guidance in this matter.

Such an interpretation would also raise vagueness concerns because the statute would likely be violated with regular frequency but only few would be subject to prosecution. *See Scott v. First Jud. Dist. Ct.*, 131 Nev. 1015, 1022-23, 363 P.3d 1159, 1164-65 (2015) (holding an obstruction ordinance was impermissibly vague because its prohibitions were "violated scores of times daily, . . . yet only some individuals—those chosen by the police in their unguided discretion—are arrested" (quoting *Hill*, 482 U.S. at 466-67)). For example, a person could be charged with obstruction for intentionally walking in front of a police officer, even if the person was unaware that doing so would hinder, delay, or obstruct the officer.

In contrast, a specific intent requirement would mitigate overbreadth concerns by narrowing the scope of criminal proscriptions that could reach constitutionally protected activity. *See, e.g., Ford v. State*, 127 Nev. 608, 619, 262 P.3d 1123, 1130 (2011) (holding a pandering of prostitution statute was not overbroad in part because the statute's intent requirement narrowed the statute's application); *see also Stubbs v. Las Vegas Metro. Police Dep't*, 792 F. App'x 441, 444-45 (9th Cir. 2019) (Tashima, J., dissenting) (stating NRS 197.190 must be construed as requiring specific intent in order to withstand constitutional scrutiny).

A specific intent requirement would also mitigate vagueness concerns by providing an objective standard for the statute's enforcement. *See Ford*, 127 Nev. at 621-22, 262 P.3d at 1132 (stating the determination of "[w]hether someone held a belief or had an intent is a true-or-false determination, not a subjective judgment such as whether conduct is 'annoying'" (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008))). Therefore, we interpret NRS 197.190 as requiring that a person have the

specific intent to hinder, delay, or obstruct a public officer in the discharge of official duties or powers.

*NRS 197.190 only applies to physical conduct and fighting words*

Willson argues that NRS 197.190 is unconstitutional because its prohibition against speech that hinders, delays, or obstructs a public officer includes speech protected by the First Amendment.

Although NRS 197.190 makes it unlawful to "hinder, delay or obstruct any public officer in the discharge of official powers or duties," the statute does not define the operative verbs "hinder," "delay," or "obstruct." These terms plainly indicate a "legislative intent to prohibit that which would interfere with law enforcement officers as they go about their duties," *Newton v. State*, 698 P.2d 1149, 1152 (Wyo. 1985), but they do not clearly indicate whether the statute encompasses mere speech, *see Hinder*, *Merriam-Webster's Collegiate Dictionary* ("to make slow or difficult the progress of: hamper" or "to hold back: check"); *Delay, Merriam-Webster's Collegiate Dictionary* (to "put off, postpone," "to stop, detain, or hinder for a time," or "to cause to be slower or to occur more slowly than normal"); *Obstruct, Merriam-Webster's Collegiate Dictionary* ("to block or close up by an obstacle" or "to hinder from passage, action, or operation: impede").

Strictly speaking, the spoken word may slow, hamper, prevent, or impede a public officer from performing their duties. *See DeFusco v. Brophy*, 311 A.2d 286, 288 (R.I. 1973) (stating "the spoken word can be just as effective in impeding an officer in the discharge of his duty as if the orater [sic] had grappled with the officer"); *see also Scott*, 131 Nev. at 1022, 363 P.3d at 1164 (stating a pedestrian may hinder or delay a deputy sheriff by asking the deputy for directions while the deputy is directing traffic at an intersection). As such, NRS 197.190 may reasonably be interpreted as prohibiting speech that hinders, delays, or obstructs a public officer.

However, the statute does not explicitly reference speech, and it does not contain all-encompassing language, such as "in any way" or "in any manner," that would suggest its provisions extend to speech. *Cf. Hill*, 482 U.S. at 455 (striking down an ordinance that made it a crime to "in any manner oppose, molest, abuse or interrupt any policeman" because it prohibited speech); *Wroten*, 466 N.W.2d at 870 ("Thus, if it were not apparent from the words themselves, the 'any way' language, as does the 'any manner' language of *Hill*, leads inexorably to the conclusion that the prohibited activity includes speech . . . ."). The terms "obstruct" and "hinder" may also connote some action (or inaction) apart from verbal expression. *See, e.g., State v. Snodgrass*, 570 P.2d 1280, 1286 (Ariz. Ct. App. 1977) (stating the term "'obstructing' . . . impl[ies] . . . 'some physical act or exertion'" (third alteration in original) (quoting *State v. Tages*, 457 P.2d 289, 292 (Ariz. Ct. App. 1969))); *Wilkerson v. State*, 556 So. 2d 453, 455 (Fla. Dist. Ct. App. 1990) (stating the term "'obstruct' . . . contemplates acts or conduct apart from verbal expressions, which operate to physically hinder or impede another in doing something"); *Bennett v. St. Louis County*, 542 S.W.3d 392, 401 (Mo. Ct. App. 2017) (stating "[t]he term 'obstruct' . . . does not suggest speech" but rather "connotes purely physical action"). As such, NRS 197.190 may also reasonably be interpreted as applying only to physical conduct. Therefore, we conclude NRS 197.190 is ambiguous as to whether it prohibits speech.

In light of the constitutional concerns previously identified, the canon of constitutional avoidance obligates this court to further limit NRS 197.190's application to physical conduct and unprotected fighting words. *See Hill*, 482 U.S. at 463 n.12 (stating "'fighting words' which 'by their very utterance inflict injury or tend to incite an immediate breach of the peace'

are not constitutionally protected" (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942))). Although the specific intent requirement "narrow[s] and clarif[ies] the statute, so as to bring it at least closer to being within constitutional parameters," *Scott*, 131 Nev. at 1027 n.6, 363 P.3d at 1168 n.6 (Hardesty, C.J., concurring in part and dissenting in part), it is not clear that this requirement would wholly resolve the constitutional concerns presented by the statute.

Notably, the specific intent requirement would not prevent NRS 197.190's application to constitutionally protected speech. *See Hill*, 482 U.S. at 469 n.18 (stating "speech does not necessarily lose its constitutional protection because the speaker intends it to interrupt an officer"); *Long v. Valentino*, 265 Cal. Rptr. 96, 101 (Ct. App. 1989) (stating "speech is generally protected by the First Amendment, even if it is intended to interfere with the performance of an officer's duty, provided no physical interference results"). The specific intent requirement also may not, in itself, provide sufficient guidance to law enforcement in the statute's application. *See Hill*, 482 U.S. at 469 n.18 (stating an intent requirement would not "cabin the excessive discretion the ordinance provides to officers"); *Scott*, 131 Nev. at 1027 n.6, 363 P.3d at 1168 n.6 (Hardesty, C.J., concurring in part and dissenting in part) (stating "there is little doubt" an obstruction ordinance would survive constitutional scrutiny if interpreted to require both specific intent and physical conduct or fighting words).

Indeed, several courts have interpreted similar statutes as being limited to physical conduct, and sometimes fighting words, so as to ensure such statutes are constitutionally firm. *See, e.g.*, *Snodgrass*, 570 P.2d at 1286-87 (holding a statute that made it a crime to "willfully resist, delay or obstruct a public officer" required "the presence of some physical

act or exertion against the officer"); *State v. Williams*, 534 A.2d 230, 236, 239 (Conn. 1987) (holding a statute that made it a crime to "obstruct[ ], resist[ ], hinder[ ] or endanger[ ] any peace officer" proscribed "only physical conduct and fighting words"); *Wilkerson*, 556 So. 2d at 454-56 (holding a statute that made it a crime to *"obstruct or oppose any such officer . . . without offering or doing violence to the person of the officer"* required some act or conduct apart from verbal expressions); *People v. Raby*, 240 N.E.2d 595, 597, 599 (Ill. 1968) (holding a statute that made it a crime to "knowingly resist[ ] or obstruct[ ] the performance by one known to the person to be a peace officer" proscribed only physical acts); *State v. Krawsky*, 426 N.W.2d 875, 876-77 (Minn. 1988) (holding a statute that made it a crime to "intentionally obstruct[ ], hinder[ ], or prevent[ ] the lawful execution of any legal process, . . . or [to] interfere[ ] with a peace officer" was "directed solely at physical acts"); *State v. Williams*, 251 P.3d 877, 879, 883 (Wash. 2011) (recognizing a statute that made it a crime to "willfully hinder[ ], delay[ ], or obstruct[ ] any law enforcement officer" required "conduct in addition to pure speech").

Therefore, we interpret NRS 197.190 as applying only to physical conduct and fighting words. We note that NRS 197.190 does not require the use of force or violence, and that a person's action (e.g., blocking the path of an officer) or inaction (e.g., refusing to obey a lawful order) may constitute physical conduct that hinders, delays, or obstructs an officer. *See State v. Hudson*, 784 P.2d 533, 537 (Wash. Ct. App. 1990) (recognizing that "nonaggressive behavior" may hinder, delay, or obstruct an officer just as "assaultive conduct"); *see also* Christopher Hall, Annotation, *What Constitutes Obstructing or Resisting Officer, in Absence of Actual Force*, 66 A.L.R.5th 397 (1999) (collecting cases where courts have determined what

constitutes obstructing an officer in the absence of actual force). Of course, whether a person's physical conduct actually hinders, delays, or obstructs a public officer is a question to be resolved by the trier of fact in a given case.

*NRS 197.190 is not facially overbroad*

Having determined what NRS 197.190 prohibits, we now consider whether NRS 197.190 is facially overbroad. A statute is facially overbroad "if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *Ford*, 127 Nev. at 612, 262 P.3d at 1125 (quoting *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999)). Because a determination that a statute is facially overbroad voids the statute in its entirety, "the overbreadth doctrine is strong medicine" that should not be employed casually. *Scott*, 131 Nev. at 1018, 363 P.3d at 1162 (quoting *Silvar v. Eighth Jud. Dist. Ct.*, 122 Nev. 289, 298, 129 P.3d 682, 688 (2006)); *see also United States v. Hansen*, 599 U.S. 762, 770 (2023).

Willson argues NRS 197.190 is facially overbroad because it allows protected speech to be made a crime. In support of this argument, Willson cites cases where ordinances were struck down as overbroad because of their application to protected speech. *See, e.g.*, *Hill*, 482 U.S. at 460-67 (holding an ordinance that made it unlawful for any person to "in any manner" oppose, molest, abuse, or interrupt a police officer was facially overbroad because it applied to speech and was not narrowly tailored to prohibit only disorderly conduct or fighting words); *Lewis v. City of New Orleans*, 415 U.S. 130, 132-34 (1974) (holding an ordinance that made it unlawful for any person to curse or revile or to use obscene or opprobrious language toward a city police officer was facially overbroad because it applied to speech and was not narrowly tailored to prohibit only fighting words).

However, as construed by this court, NRS 197.190 does not apply to protected speech; it applies only to physical conduct and fighting words. This limitation positively distinguishes NRS 197.190 from the ordinances struck down in *Hill* and *Lewis*: "the statute does not apply to ordinary verbal criticism directed at a police officer even while the officer is performing his official duties and does not apply to the mere act of [verbally] interrupting an officer, even intentionally." *Krawsky*, 426 N.W.2d at 878.

This limitation and NRS 197.190's specific intent requirement also distinguishes NRS 197.190 from the ordinance deemed unconstitutional in *Scott*. There, the Nevada Supreme Court held an ordinance that made it unlawful for "any person to hinder, obstruct, resist, delay, molest *or threaten to hinder, obstruct, resist, delay or molest* any city officer . . . in the discharge of his official duties" was overbroad. *Scott*, 131 Nev. at 1018-21, 363 P.3d at 1161-63 (emphasis added). In so holding, the supreme court recognized that the ordinance did not contain a specific intent requirement,[7] *id.* at 1019, 363 P.3d at 1163, and that the ordinance applied to speech in light of its prohibition of "mere threats" to hinder, obstruct, resist, delay, or molest a police officer, *id.* at 1020, 363 P.3d at 1163.

Given our holdings that NRS 197.190 does not apply to protected speech and only prohibits physical conduct or fighting words that are specifically intended to hinder, delay, or obstruct a public officer, NRS

---

[7]Although the supreme court noted that an intent requirement would not, in itself, save the ordinance, *Scott*, 131 Nev. at 1019 n.3, 363 P.3d at 1163 n.3, the supreme court also indicated that invalidating the ordinance would not affect NRS 199.280's validity, which is similar to NRS 197.190, because that statute was "explicitly limited by an intent requirement," *id.* at 1020 n.4, 363 P.3d at 1163 n.4; *see also supra* note 3.

197.190 is distinguishable from the ordinances in *Hill*, *Lewis*, and *Scott*. Moreover, the mere fact that "a person's speech may at times be implicated incidentally in the enforcement of this statute" does not render the statute facially overbroad. *Wilkerson*, 556 So. 2d at 456. Therefore, Willson fails to demonstrate that NRS 197.190 is substantially overbroad relative to the scope of its plainly legitimate sweep, and we conclude that NRS 197.190 is not facially overbroad.

*NRS 197.190 is not facially vague*

Willson argues NRS 197.190 is unconstitutionally vague on its face because it fails to provide persons of ordinary intelligence fair notice of what is prohibited and it authorizes or encourages seriously discriminatory or arbitrary enforcement.

"The void-for-vagueness doctrine is predicated upon a statute's repugnancy to the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Scott*, 131 Nev. at 1021, 363 P.3d at 1163-64 (quoting *Silvar*, 122 Nev. at 293, 129 P.3d at 684-85). A statute is unconstitutionally vague "(1) if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited'; or (2) if it 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Id.* at 1021, 363 P.3d at 1164 (quoting *State v. Castaneda*, 126 Nev. 478, 481-82, 245 P.3d 550, 553 (2010)). "The first prong is concerned with guiding those who may be subject to potentially vague statutes, while the second—and more important—prong is concerned with guiding the enforcers of statutes." *Silvar*, 122 Nev. at 293, 129 P.3d at 685. A statute involving criminal penalties or constitutionally protected rights is facially vague if "vagueness so permeates the text that the statute cannot meet these requirements in most applications." *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 512-13, 217 P.3d 546, 553-54 (2009).

*NRS 197.190 provides sufficient notice of what is prohibited*

Willson argues NRS 197.190 fails to provide persons of ordinary intelligence fair notice that they may be arrested for protected speech. However, as previously discussed, NRS 197.190 does not prohibit protected speech. Rather, NRS 197.190 prohibits only physical conduct and fighting words that hinder, delay, or obstruct a public officer, and the terms "hinder," "delay," and "obstruct" are words of recognized meaning that provide persons of ordinary intelligence fair notice that they may not interfere with or hamper the activities of a public officer. *See Newton v. State*, 698 P.2d 1149, 1152 (Wyo. 1985) (stating the terms "hinder," "delay," and "obstruct" are "words of recognized meaning by those of ordinary intelligence"); *see also Snodgrass*, 570 P.2d at 1286, 1289 (stating "a person of common intelligence can easily ascertain what acts are prohibited" under a statute that made it a crime to "willfully resist, delay or obstruct a public officer"); *Krawsky*, 426 N.W.2d at 876, 878 (stating "[p]ersons of common intelligence need not guess at whether their conduct violates" a statute that made it a crime to "intentionally obstruct[ ], hinder[ ], or prevent[ ] the lawful execution of any legal process, . . . or [to] interfere[ ] with a peace officer").

Moreover, NRS 197.190's specific intent requirement further ensures that persons of ordinary intelligence have fair notice of when their conduct constitutes a criminal offense. *See Ford*, 127 Nev. at 621, 262 P.3d at 1132 (stating "a law that requires specific intent to produce a prohibited result may avoid vagueness, both by giving the defendant notice of what is prohibited and by affording adequate law enforcement standards"); *see also Vill. of Hoffman Ests. v. Flipside, Hoffman Ests. Inc.*, 455 U.S. 489, 499 (1982) (recognizing "that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed"). Accordingly, we conclude NRS

COURT OF APPEALS
OF
NEVADA

(O) 1947B

22

197.190 does not fail to provide a person of ordinary intelligence sufficient notice of what is prohibited.

*NRS 197.190 is not so standardless so as to authorize or encourage seriously discriminatory or arbitrary enforcement*

Willson argues NRS 197.190 authorizes or encourages seriously discriminatory or arbitrary enforcement because it grants police officers unfettered discretion to arrest individuals based on their subjective belief that a citizen has obstructed an arrest or investigation.

Police officers must always exercise some judgment in determining whether a person has obstructed the performance of a public officer's duties. And "given the wide variety of circumstances in which the type of conduct [the statute] legitimately seeks to proscribe can occur," some degree of judgment must be permitted. *Krawsky*, 426 N.W.2d at 878-79. Indeed, "it seems unlikely that a substantially more precise standard could be formulated which would not risk nullification in practice because of easy evasion." *Id.* As the United States Supreme Court has similarly recognized,

> [t]here are areas of human conduct where, by the nature of the problems presented, legislatures simply cannot establish standards with great precision. Control of the broad range of disorderly conduct that may inhibit a policeman in the performance of his official duties may be one such area, requiring as it does an on-the-spot assessment of the need to keep order.

*Smith v. Goguen*, 415 U.S. 566, 581 (1974).

NRS 197.190 does not provide those charged with enforcement of its provisions unfettered and unguided discretion. As construed by this court, NRS 197.190 prohibits only physical conduct and fighting words that hinder, delay, or obstruct a public officer in the discharge of official duties or powers. As such, law enforcement has no discretion to arrest persons for

protected speech or for physical conduct that is merely annoying or offensive. *Cf. Scott*, 131 Nev. at 1022, 363 P.3d at 1164 (holding an obstruction ordinance was unconstitutionally vague because it was "worded so broadly that sheriffs [sic] deputies [were] given 'unfettered discretion to arrest individuals for words or conduct that annoy or offend them'" (quoting *Hill*, 482 U.S. at 465)).

Moreover, NRS 197.190's specific intent requirement prevents law enforcement from citing or arresting persons for innocent conduct that incidentally interferes with a public officer. *See Ford*, 127 Nev. at 622-23, 262 P.3d at 1132 (recognizing that a specific intent requirement curbs the amount of discretion a statute affords to law enforcement); *City of Las Vegas v. Eighth Jud. Dist. Ct.*, 122 Nev. 1041, 1051, 146 P.3d 240, 247 (2006) (holding an ordinance "provide[d] an adequate standard for law enforcement because officers will know that, in order to prosecute someone for violating the ordinance, the prosecutor must prove that the dancer or the patron fondled or caressed the other with the intent to sexually arouse or excite").

Accordingly, we conclude NRS 197.190 is not so standardless that it authorizes or encourages seriously discriminatory or arbitrary enforcement, and that NRS 197.190 is not so permeated by vagueness so as to render the statute facially vague.

*NRS 197.190 is not unconstitutional as applied to Willson*

Willson argues that NRS 197.190 is overbroad as applied to her because she was cited and convicted for her protected speech and that it is vague as applied to her because she "had no reason to believe that she would be cited or convicted for that speech."

In contrast to a facial constitutional challenge, which "seeks to invalidate a statute . . . itself," an as-applied constitutional challenge

COURT OF APPEALS
OF
NEVADA

(O) 1947B

24

"concedes that a statute may be facially constitutional or constitutional in many of its applications but contends that it is not so under the particular circumstances of the case." *See* 16 C.J.S. *Constitutional Law* § 243 (2023). In light of our holding that NRS 197.190 does not apply to protected speech, Willson's claims that NRS 197.190 is unconstitutional as applied to her protected speech do not actually implicate the constitutionality of the statute.[8] Rather, the issue that remains is whether her actions and words in fact constitute protected speech: if they do constitute protected speech, then they are not punishable under the statute as construed by this court; but if they do not constitute protected speech, then they may be punishable under the statute. For this reason, Willson's as-applied claims are more properly viewed as claims challenging the sufficiency of the evidence to support her conviction. *See Ex parte Carter*, 514 S.W.3d 776, 780 (Tex. App. 2017) (recognizing the appellant's as-applied claim was actually a "veiled sufficiency challenge"); *see also In re Mental Commitment of K.E.K.*, 954 N.W.2d 366, 380 (Wis. 2021) (stating the petitioner's "dispute is with the sufficiency of the evidence, not with the constitutionality of" the statute).

The district court did not have the benefit of our interpretation of NRS 197.190 as being limited to physical conduct and fighting words, and it therefore did not consider whether there was sufficient evidence that Willson engaged in physical conduct or uttered fighting words so as to support her conviction of violating NRS 197.190. Because Willson's as-applied constitutional challenges are more properly viewed as challenges to

---

[8]For this reason, Willson's "as-applied" claims necessarily fail. *See, e.g., In re Mental Commitment of K.E.K.*, 954 N.W.2d 366, 379 (Wis. 2021) (rejecting a petitioner's claim that a statute was unconstitutional as applied to them because "[t]he statute ha[d] no application, constitutional or otherwise, against those" in the petitioner's position).

the sufficiency of the evidence, and because Willson raised these claims in the district court, we grant the petition and instruct the district court to reconsider Willson's direct appeal for the sole purpose of addressing whether sufficient evidence supported Willson's conviction under this court's interpretation of NRS 197.190.[9] *See Cornella v. Just. Ct. of New River Twp.*, 132 Nev. 587, 600, 377 P.3d 97, 106 (2016) (upholding the constitutionality of the challenged statute but granting the petition with instructions for the district court to reconsider the petitioner's direct appeal).

## *CONCLUSION*

For the reasons discussed above, we conclude that NRS 197.190 only applies to physical conduct and fighting words that are specifically intended to hinder, delay, or obstruct a public officer and, thus, the statute is not unconstitutionally overbroad or vague, either on its face or as applied to Willson. However, in light of our interpretation of NRS 197.190, Willson's as-applied constitutional challenges are more properly viewed as challenges to the sufficiency of the evidence. Because the district court did not consider whether there was sufficient evidence to support Willson's conviction, we grant the petition and direct the clerk of this court to issue a writ of certiorari upholding NRS 197.190's constitutionality and instructing the district court to reconsider Willson's direct appeal for the sole purpose of

---

[9]Because a sufficiency-of-the-evidence claim is outside the scope of a petition for a writ of certiorari filed pursuant to NRS 34.020(3), *see* NRS 34.020(3) (stating "the writ shall be granted . . . for the purpose of reviewing the constitutionality or validity of [a] statute or ordinance"), we do not address whether there is sufficient evidence to support Willson's conviction, *see Cornella v. Just. Ct. of New River Twp.*, 132 Nev. 587, 600 n.14, 377 P.3d 97, 106 n.14 (2016).

addressing whether, under this court's interpretation of the statute, sufficient evidence supported Willson's conviction.

_____, C.J.
Gibbons

_____, J.
Bulla

_____, J.
Westbrook

COURT OF APPEALS
OF
NEVADA

(O) 1947B